**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:22-cv-21998-JEM/Becerra

STEVEN MITCHELL,

Plaintiff,

v.

KENDRICK NUNN,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT AGAINST DEFENDANT KENDRICK NUNN**

**THIS CAUSE** came before the Court on Plaintiff, Steve Mitchell's, Motion for Entry of Final Default Judgment by Default Against Defendant, Kendrick Nunn (the "Motion").[1] ECF No. [20]. Defendant did not file a response to the Motion, and the time to do so has passed. Upon due consideration of the Motion, the pertinent portions of the record, and the applicable law, it is hereby **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE** as set forth herein.

## I. BACKGROUND

Plaintiff alleges that he is "an acclaimed professional photographer" who owns a copyright, Registration Number VA 2-202-807, in a "unique photograph of the Defendant . . . that was never released to the public" (the "Photograph"). ECF No. [1] at ¶¶ 2, 20–66. At the time of the injury giving rise to this case, Defendant was reportedly playing for the Miami Heat.[2] *Id.* at ¶ 17. Plaintiff claims he was "hired to photograph the players" at a "Miami Heat pre-season event at American

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [27].

[2] Plaintiff also alleges that upon information and belief, Defendant "purposefully availed itself of the benefits of doing business in this District." ECF No. [1] at 9.

Airlines Stadium." *Id.* at ¶¶ 20–21. There, he captured the Photograph, of which he is the "sole author and creator . . . ." *Id.* at ¶ 24; *see also* ECF No. [1] at 16–17. Plaintiff contends that "Defendant[] published the Photograph on his Facebook . . . and Instagram accounts without [Plaintiff's] permission," and "without crediting Mr. Mitchell as the creator." *Id.* at ¶¶ 26, 45. Defendant only removed the Photograph "[u]pon learning of his infringement [and] . . . being put on notice repeatedly, and only after the Photograph was being distributed by additional third parties." *Id.* at ¶ 46.

Plaintiff says "Defendant has numerous . . . endorsement deals pursuant to which Defendant[] earn[s] substantial sums of money to endorse various products and brands[,] . . . including by publishing photographs of himself using such products and brands." *Id.* at ¶¶ 30–31. To this end, "Defendant routinely uses his social media platforms . . . to promote various brands and products . . . ." *Id.* at ¶ 32. Plaintiff claims "Defendant published the Photograph knowing that it would function to promote his brand, and image, to increase his endorsement sales." *Id.* at ¶ 39. In other words, Plaintiff says Defendant "has a financial incentive to increase his social media followers and publish content to his social media accounts," and sharing the Photograph was "intended to attract additional followers and allow him to charge third-party sponsors larger sums of money to benefit from his influence to promote and enforce their brands and products." *Id.* at ¶¶ 40, 43. Plaintiff claims "Defendant has copied and published other photographs to his social media account without permission,"[3] a pattern of infringement that "demonstrates that . . . Defendant's conduct was willful under the law . . . ." *Id.* at ¶¶ 47–48.

Plaintiff avers that he "licensed his sports photographs primarily through Imagn Content Services, LLC, a division of the USA Today Media Network," and that he "retains all copyrights

[3] Plaintiff offers no further information regarding these additional alleged acts of infringement.

in all photographs that he created and licensed through Imagn." *Id.* at ¶¶ 15, 50. A copy of Plaintiff's licensing agreement with Imagn is purportedly attached as Exhibit 4 to the Complaint (the "Agreement"). *Id.* at ¶ 51; *Id.* at 22–29. Pursuant to this Agreement, Plaintiff granted US Presswire, LLC (the "Agency") "the exclusive worldwide right to use, copy, perform, display, market, distribute, license, sub-license and negotiate the production rights of all photographic images . . . delivered to Agency by [Plaintiff] (. . . the "Images"), . . . whether such Images are created by [Plaintiff] while working under credentials issued from or through Agency or otherwise." *Id.* at 22. However, Plaintiff retained "a limited right to license the Images to [Plaintiff's] own editorial clients" provided certain enumerated conditions are met. *Id.*

The Agreement further provides that the Agency shall pay Plaintiff an assignment fee "in lieu of any compensation for the uses of Images . . . by Agency's editorial subscription based customers worldwide," not to include "licensing proceeds for any commercial use or editorial a la carte sales." *Id.* at 24. With respect to any editorial or commercial a la carte Images, the Agency retains a commission in accordance with the Commission Schedule attached to the Agreement, with Plaintiff to receive the remainder of such fees. *Id.* The Commission Schedule provides that the Agency's commission is fifty percent of any such fees, although the Agreement does not specify how much the Agency charges in licensing fees for use of the Images. *Id.* at 28.

Plaintiff filed his two-count complaint against Defendant on June 30, 2022, asserting: (1) copyright infringement; and (2) unauthorized removal of copyright management information. *Id.* at 6–7. Defendant was served on August 5, 2022. ECF No. [8] at 1. After Defendant failed to timely respond to the Complaint, the Clerk of Court entered a Clerk's Default against Defendant on October 21, 2022. ECF Nos. [16], [17]. Plaintiff subsequently filed the instant Motion seeking entry of a default judgment against Defendant and an award of "statutory damages of at least $300,000.00 under 17 U.S.C. § 504(c)(2)," as well as attorneys' fees in the amount of $12,575 and

costs in the amount of $575.00.[4] ECF No. [20] at 6–7. Plaintiff did not submit any declarations, affidavits, or billing records in conjunction with the Motion.

## II. ANALYSIS

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. First, subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." Fed. R. Civ. P. 55(a). Next, upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, . . . on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1).

A default admits plaintiff's well-plead allegations of fact. *Lary v. Trinity Physician Fin. & Ins. Services*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Thus, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace*

---

[4] In the Complaint, Plaintiff also seeks "[a] preliminary and permanent injunction enjoining and restraining the Defendant and all persons acting in concert with the Defendant from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling any materials that are substantially similar to the photograph." ECF No. [1] at ¶ 69. Additionally, Plaintiff requested for Defendant and "all persons acting in concert with the Defendant" to "certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendant's possession or control." *Id.* Lastly, Plaintiff seeks a "preliminary and permanent injunction enjoining and restraining Defendant and its agents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon [Plaintiff's] . . . copyrights." *Id.* at ¶ 70. However, in the Motion, Plaintiff only makes a passing reference, and does not establish entitlement to, injunctive relief. Accordingly, the Court does not evaluate this request herein.

*Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard).

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)) (quotations and citations omitted). Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations and citations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

**A. Copyright Infringement.**

"To establish a prima facie case of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991)). A plaintiff satisfies the first prong by showing that the work is original and that plaintiff "'complied with applicable statutory formalities.'" *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995), *aff'd by an equally divided Court*, 516 U.S. 233 (1996) (citation omitted)). "In a judicial proceeding, 'certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.'"

*Latimer*, 601 F.3d at 1233 (quoting 17 U.S.C. § 410(c)). "Once the plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that the 'work in which copyright is claimed is unprotectable (for lack of originality).'" *Id.* (quoting *Bateman*, 79 F.3d at 1541). To meet the second prong, "a plaintiff must establish, as a factual matter, that the alleged infringer actually copied plaintiff's copyrighted material" and that "the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Id.*; *Lotus*, 49 F.3d at 813.

The undersigned has carefully reviewed the Certificate of Registration for the Photograph that is attached to the Complaint (the "Certificate"). ECF No. [1] at 16–17. The Certificate bears an effective date of April 15, 2020, which is within five years of the October 24, 2019 Instagram post of the Photograph in question. *Id.* at 16–7, 20. Plaintiff alleges that "[n]o other social media accounts published the Photograph prior to Defendant[']s unauthorized publication." *Id.* at ¶ 29. Thus, the Court finds that the first prong of Plaintiff's copyright infringement claim is satisfied, as Plaintiff has presented prima facie evidence of the validity of his copyright in the Photograph, and Defendant has failed to rebut it.

Next, Plaintiff alleges that "Defendant infringed [his] . . . copyright by copying, reproducing, publishing, distributing, altering, and publicly displaying the Photograph on his social media accounts without authorization, license, or permission." *Id.* at ¶ 53. This establishes the first part of the second prong of the governing standard. Moreover, upon review of the Photograph and the alleged infringing post, the undersigned agrees with Plaintiff that "[t]here are no factual or subjective issues of 'substantial similarity' here because the [Photograph] in question is a whole photograph, and publication was of the exact copy with no credits." ECF Nos. [20] at 4; [1] at 11, 20; *see also Sadowski v. Orion Healthcare Services, Inc.*, No. 21-cv-24475, 2022 WL 3155037, at *2 (S.D. Fla. July 21, 2022), *report and recommendation adopted*, 2022 WL

17144227 (S.D. Fla. Nov. 22, 2022) ("There is no issue here, factually, or subjectively, regarding 'substantial similarity' because the copied work in question is an exact duplicate of the Photograph."). Accordingly, the Court finds that Plaintiff has properly established his copyright infringement claim against Defendant.

**B. Unauthorized Removal of Copyright Management Information.**

Under 17 U.S.C. § 1202(b),

> "[n]o person shall, without the authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). Here, Plaintiff alleges that "[p]rior to publishing the Photograph to his social media accounts, Defendant intentionally removed, cropped out, and/or failed to include the credit information that accompanied the authorized post of the Photograph by Imagn/USA Today Sports." ECF No. [1] at ¶ 61. Plaintiff further claims that Defendant "published and distributed . . . [the] Photograph knowing that the copyright management information had been removed without the authority of the copyright owner" and "knowing and/or having reasonable grounds to know that such removal would facilitate the alteration and infringement of Mr. Mitchell's copyrights in the Photograph." *Id.* at ¶¶ 63–64. Accordingly, the undersigned finds that Plaintiff has pled sufficient facts to establish Defendant's liability for unauthorized removal of copyright management information.

**C. Willful Infringement.**

Finally, "[w]illful infringement has been described as when the infringer acted with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" *Artista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (quoting *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 464 (E.D. Pa. 1987)). This may be inferred from default alone. *Id.* at 1313.

Here, Plaintiff alleges that "Defendant removed the Photograph only after being put on notice repeatedly, and only after the Photograph was being distributed by additional third parties." ECF No. [1] at ¶ 46. Plaintiff says that Defendant's "repeated infringement of Plaintiff's copyrights further demonstrates that the Defendant's conduct was willful under the law . . . ." *Id.* at ¶ 48. "Given Plaintiff's repeated requests and Defendant's reproduction, distribution, and public display of the . . . [Photograph] without obtaining, or even seeking, permission from Plaintiff as copyright owner," along with Defendant's "refusal to pay a licensing fee to compensate for its use of" the Photograph, Plaintiff claims "Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that [his] conduct infringed upon Plaintiff[']s exclusive copyrights in the" Photograph. ECF No. [20] at 4–5. In other words, Defendant was notified, and thus had actual knowledge, that his conduct infringed upon Plaintiff's copyright in the Photograph. Even in the face of "repeated requests," Defendant continued his infringing conduct by failing to (1) remove the photograph, (2) seek a license, or (3) otherwise compensate Plaintiff for its use. From these factual allegations, unrebutted by Defendant as a result of the default, the Court concludes that Plaintiff has sufficiently established that Defendant's infringement of Plaintiff's copyright in the Photograph was willful.

Based on Sections II.A-C herein, the undersigned hereby **RECOMMENDS** that a default judgment be entered in Plaintiff's favor as to liability.

**D. Statutory Damages.**

17 U.S.C. § 504(b) empowers a copyright owner to elect, "instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, . . . in a sum of not less than $750 or more than $30,000 as the court considers just." *Id.* at (1). However, if the "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* at (2). Generally, courts consider the following factors to calculate damages: "(1) the infringers' blameworthiness (willful, knowing, or innocent); (2) the expenses saved and the profits reaped by the defendants in connection with the infringement; (3) the revenues lost by the plaintiffs due to the defendants' conduct; and (4) the deterrent value of the damages imposed." *Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014).

Here, Plaintiff states that "when an infringing party does not provide expenses saved and profits reaped by the infringing party, the court will instead look to the actual damages and willful conduct and award an amount of two to three times actual damages . . . ." ECF No. [20] at 5. Plaintiff then requests statutory damages "of at least $300,000.00 under 17 U.S.C. § 504(c)(2) . . . to accomplish full compensation to the Plaintiff for the damages suffered, . . . create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages[,] and to deter future violations of copyright law." ECF No. [20] at 6.

This statement notwithstanding, Plaintiff has provided no information to enable the Court to evaluate its request and understand what damages he actually incurred. Indeed, it is altogether unclear what calculation Plaintiff used to arrive at the $300,000.00 figure other than taking the maximum award allowed under the statute for willful infringement and multiplying it by two. In

short, Plaintiff provides no facts from which the Court can conclude that the maximum award authorized under 17 U.S.C. § 504(c)(2) is warranted. Plaintiff also glosses over the fact that pursuant to the Agreement, (1) he only had a limited right to grant licenses to third parties, and (2) the Agency was entitled to 50% of the licensing fees charged for use of the Images. ECF No. [1] at 28. Without knowing how much would have been charged in licensing fees for Defendant's use of the Photograph (or a comparable photograph), the Court cannot calculate Plaintiff's damages, much less double or triple them as proposed by the Plaintiff.

Based on the record before the Court, Plaintiff's request for damages in the Motion is without merit. *See Markos v. Yacht Charters of Miami.com, LLC*, No. 19-cv-22284, 2019 WL 8989936, at *3 (S.D. Fla. Oct. 2, 2019), *report and recommendation adopted*, 2019 WL 8989935 (S.D. Fla. Oct. 23, 2019) (quoting *Hawaiiweb, Inc. v. Experience Hawaii, Inc.*, 2017 WL 382617, at *7 (N.D. Ga. Jan. 27, 2017)) ("'Statutory damages are "not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered.'") The alleged deterrent value served by statutory damages of at least $300,000.00 is insufficient, on its own, to justify such an award. Defendant has not carried its burden of establishing the basis for his request, nor can the Court determine a proper reduced award because Defendant has not offered any information with which the Court can make the requisite assessment. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's request for at least $300,000.00 in statutory damages be **DENIED WITHOUT PREJUDICE**.

**E. Attorneys' Fees and Costs.**

Plaintiff requests attorneys' fees in the amount of $12,575.00 and costs in the amount of $575.00 pursuant to 17 U.S.C. § 505. ECF No. [20] at 6–7. This statute provides that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as

part of the costs." 17 U.S.C. §505. To assess the reasonableness of an attorneys' fee award, the Eleventh Circuit utilizes the lodestar method. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar "is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000). The fee applicant bears the burden of establishing entitlement to the amount of attorneys' fees sought. *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir 1999); *Hermosilla v. Coca-Cola Co.*, No. 10-cv-21418, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action."). Pursuant to Local Rule 7.3, a motion for attorneys' fees and non-taxable expenses and costs must, in pertinent part:

> (5) provide:
>
> > (A) the identity, experience, and qualifications for each timekeeper for whom fees are sought;
> > (B) the number of hours reasonably expended by each timekeeper;
> > (C) a description of the tasks done during those hours; and
> > (D) the hourly rate(s) claimed for each time keeper;
>
> (6) describe and document with invoices all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920;
>
> (7) be verified; and
>
> (8) certify that a good faith effort to resolve issues by agreement occurred pursuant to Local Rule 7.3(b) . . . .

S.D. Fla. L.R. 7.3(a). Because this Court has recommended that default judgment be entered in Plaintiff's favor as to liability, Plaintiff would be the prevailing party and therefore entitled to recover his attorneys' fees and costs under 17 U.S.C. § 505. However, Plaintiff's request for attorneys' fees and costs in the Motion is not only unverified and lacks the certificate of good faith required under Local Rule 7.3(a)(8), but it fails to identify the timekeepers who billed time in

pursuit of this case, how much time they billed, what tasks they undertook, and at what hourly rate. Moreover, Plaintiff does not explain what costs were expended and for what purpose. The Motion does not attach any invoices, affidavits, or other backup documentation evidencing fees or costs in any amount. Rather, all that is before the Court is an unsupported request. As such, Plaintiff's request for fees and costs in the Motion falls fatally short of meeting the requirements established by controlling caselaw and the Local Rules and should be **DENIED WITHOUT PREJUDICE**.

## III. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion be **GRANTED** as to liability and **DENIED WITHOUT PREJUDICE** as to damages and attorneys' fees and costs.

## IV. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period because the Defendant has not made an appearance in this action. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on February 26, 2024.

**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**